SANDRA CABRINA JENKINS, Judge.
hln a jury trial, for violation of La. R.S. 14:62.8, Home Invasion, the state presented evidence to establish that defendant, Kevin T. Falkins, forcibly entered the residence of Kathy Davis, removed her sister, Kiera Duncan, from the apartment, and dragged Ms. Duncan down the street until a police officer arrived who subsequently detained the defendant and secured the safety of Ms. Duncan.
The jury returned a responsive verdict of attempted unauthorized entry of an inhabited dwelling pursuant to La. R.S. 14:27 and La. R.S. 14:62.3. Mr. Falkins was sentenced to a term of imprisonment for thirty-five years without the benefit of parole, probation, or suspension of sentence under the habitual offender statute, La. R.S. 15:529.1.
On appeal, the defendant assigns six errors. Specifically, he claims that the trial court erred in: (1) denying his motion in limine; (2) allowing the admission of *842 hearsay evidence; (3) admitting jailhouse tapes that were not properly authenticated; (4) denying his motion to continue; (5) denying his motion for post-verdict judgment of acquittal and/or motion for new trial; and (6) imposing a sentence under the habitual offender statute, La. R.S. 15:529.1, without the benefit of parole.
RFor the reasons discussed herein, the conviction of the defendant, Kevin T. Fal-kins, is affirmed. We also amend Mr. Falkins’ sentence to delete that portion of the sentence restricting his eligibility for parole and affirm his sentence as amended.
PROCEDURAL HISTORY
Defendant Kevin T. Falkins was charged by bill of information on March 23, 2011, with home invasion where a person under the age of twelve years old was present, a violation of La. R.S. 14:62.8(3).[1] Prior to trial, the defendant’s motion to continue and pre-trial motions to exclude evidence of 911 and jailhouse calls were denied. Thereafter, a twelve-person jury found the defendant guilty of attempted unauthorized entry of an inhabited dwelling in violation La. R.S. 14:27 and La. R.S. 14:62.3. The trial court denied the defendant’s motions for post-verdict judgment of acquittal and new trial. Defendant was thereafter adjudicated a fourth-felony habitual offender on that same date. Defendant implicitly waived all delays and was sentenced to thirty-five years at hard labor, without the benefit of parole, probation, or suspension of sentence. The defendant’s motion to reconsider his sentence was denied.
RELEVANT FACTS
The state presented no lay witnesses or a victim at trial. Instead the police officers who responded to the scene testified as to the course of events that unfolded on the morning of January 22, 2011. The custodians of records for the New Orleans Police Department and the Orleans Parish Sheriffs Office also ^testified at trial. In addition, the State relied on 911 recordings, jailhouse recordings, photographs of Kiera Duncan, and photographs of the scene to describe for the jury what occurred at the Walnut Square Apartments in New Orleans East during the early morning hours of January 22, 2011.
Prior to publishing the 911 recordings to the jury, Yolanda Haynes, a 911 operator and custodian of records for the New Orleans Police Department Emergency Call Center, authenticated a CD which contained the 911 calls and incident recall log which document the time and transcript of the 911 calls. The jury heard the following calls.
The first call was received at the emergency call center at 6:34 a.m. The caller gives her address as 8501 N. 1-10 Service Road. While attempting to take the information from the caller, a pounding sound is heard by the operator and she questions the caller “is that him?” The caller reports that “he” is beating on the door like he is crazy, and that she had “kids in the apartment and he is out here threatening me.” The operator notes that the address is the Walnut Square Apartments, and asks the caller what apartment she is in. The caller responds that she is in “2-B.” The operator asks the caller her name, and she replies: “Kiera.” The operator then questions the caller as to whether she called the night before to report that “he busted her in the face.” Kiera responds “yes” and the operator acknowledges she is the same operator she spoke with the *843 night before. The operator then asks Ki-era what her male friend’s name is, and she replies: “Kevin Falkins.” The operator proceeds to get a description of what the defendant is wearing and promises to send the police to the apartment.
The second call the jury heard was that of the operator from a security company. The incident recall log reflects that the second 911 call was received at |4the emergency call center at 6:37 a.m. The caller identified herself as “Joy,” an operator for the 24-hour answering service for Walnut Square Apartments. She informed the 911 operator that she received a call from a panicked female requesting that security be sent to apartment 2-B. Joy informed the 911 operator that because she could not locate their security team on the apartment grounds that she had to make the call for police assistance. Joy also confirmed that the address from which she received the call for help was 8501 N. I — 10 Service Road, Apartment 2-B.
The third and final 911 call published to the jury was originated by Kathy Davis. As reflected in the incident recall log, this call came at 6:39 a.m. Kathy reported that “we” called for police to come to Walnut Square, Apartment 2-B. She reported that her sister’s boyfriend was at the door; that he was getting violent; and that he was kicking her door. She reported that the boyfriend’s name was Kevin Falkins, the last name spelled by her as F-a-u-l-k-in-s. She described him as a black male. She said she had seven children inside. She frantically implored the 911 operator to hurry up, stating that her door was almost open. Ms. Davis suddenly exclaimed something that sounded like “he’s in,” and she pleaded: “Kevin.” One can clearly hear a male voice, whereas before no male voice was heard. One can hear a disturbance in the background, with a male voice, and it sounds as if Ms. Davis is sobbing or on the verge of sobbing as she asks the operator to please send the police. One can hear an excited female voice in the background excitedly saying “Kathy” and repeatedly exclaiming “please.” A male voice is heard. Ms. Davis says something about someone “kicked in my door.” Kathy is then heard crying continuously, while responding to the operator’s questions. The operator asks the caller where her sister is, and the caller responds |Bthat he is dragging her up the street. The caller states that “he” kicked in both of her doors and also her window.
Officer Joshua Carthon of the New Orleans Police Department was the first officer to arrive on the scene. He explained to the jury that upon arrival, he observed a male subject pulling/dragging a female away so he immediately exited his police unit to detain the subject. Officer Carthon described the female’s demeanor as hysterical, upset, and angry and the defendant was calm. Once other units arrived approximately forty-five minutes later, Officer Carthon relayed to Officer Warren Gibson what he observed and then turned the investigation over to Officer Gibson.
Officer Warren Gibson testified that when he arrived on the scene, he observed Officer Carthon holding the defendant in handcuffs. The victim, Kiera Duncan, was standing on the sidewalk bleeding from the mouth, with a bruise to the left side of her face. While he was interviewing Ms. Duncan, another female approached and gave him information.
According to Officer Gibson, he surveyed the scene and observed that the front door of the apartment was split at the locking mechanism, and that a locking mechanism was on the floor. He also observed that a bedroom door had been kicked in and the door damaged. Besides Kiera Duncan, three toddlers and Kathy Davis were present in the apartment. Of- *844 fleer Gibson said there was another male at the residence, but he did not speak with him.
Officer Gibson was able to share with the jury what Ms. Davis told him about the incident at the apartment. Officer Gibson stated that Ms. Davis resided in the apartment where the incident occurred. Ms. Davis told Officer Gibson that when defendant entered the front door they ran to the bedroom; that defendant | Jacked in that door and began striking Ms. Duncan about the head and face with a closed fist; and that he then took Ms. Duncan outside.
Officer Gibson eventually placed Mr. Falkins under arrest. After he advised the defendant of his Miranda[2] rights, defendant stated that he and the victim had arrived at the apartment complex together in a taxi cab, at approximately 6:30 a.m. Defendant told the officer that the victim became angry, stormed out, and entered the apartment, locking him outside. He said she refused his requests to open the door, and that he then “bumped” the door with his shoulder and it came open. Defendant admitted that he entered the residence, proceeded to the victim’s bedroom, and took her outside. Defendant had no weapon on his person.
During the trial, Officer Gibson successfully identified photographs of the scene and photographs taken of Kiera Duncan’s injuries that evening which were published to the jury.
The final witness to testify at trial was Don Hancock, the telephone supervisor for the Orleans Parish Sheriffs Office. Mr. Hancock testified that he was responsible for the operations of the telecommunications systems at the prison, including the inmate phone- system. Mr. Hancock explained to the jury the process by which inmates are identified at booking with a pin number and how that same pin number also identifies the inmate in their telephone system. He testified that when an inmate’s telephone call is accepted by the party called, both the inmate and the party are advised in a recording that all calls are subject to monitoring and recording. Mr. Hancock informed the jury that a disk was created containing the |7phone calls made by the defendant from January 22, 2011 through February 22, 2011 as well as a detailed call sheet of those calls made during that period. Mr. Hancock established that he was the custodian of evidence pertaining to inmate telephone calls prior to the court allowing the calls to be heard by the jury. Of the ninety calls on the CD, only four were played for the jury’s hearing.
In the first call, the participants refer to each other as “Kevin” and “Kiera.” After reassuring Kiera that he was not mad at her and that she did the right thing, Kevin implores Kiera to say that it was an accident. He tells Kiera that he has been charged with kidnapping. She mentions that he kicked the door in and he offers to pay for door. The call ends with Kevin asking for “Niecy’s” number.
The second call is between a male named “Kevin” and a female referred to as “J” or “Jade.” The context of the call suggests the two were involved in a romantic relationship. Kevin begins explaining that he is in a “bad situation” and will be home. The woman tells him to be honest because she already knows everything. He then admits to kicking in “Kathy’s” door. After Kevin says his mother told him the charges would be dropped, the woman explains that she spoke to Ki-era and his mother and that the only charge Kiera is dropping is the kidnapping charge. She also tells him about informa *845 tion Kiera has posted on Facebook about the incident, claiming she could have been killed. Toward the end of the call, the female initiates a three-way call with Kevin’s mother at his request.
The third call is between “Kevin” and “Niecy.” The two discuss charges of false imprisonment and aggravated battery and the fact that Kevin is on probation. Niecy asks if something is wrong with Kiera’s face, and Kevin replies that nothing is wrong with her face. Kevin’s mother apparently gets on the telephone; during the conversation she refers to Kiera and her sister, Kathy Davis.
|RThe fourth call begins with “Kevin” identifying himself to “Kathy.” He apologizes and says that he will get the door fixed. Kathy explains that “she” — presumably Kiera — is dropping the kidnapping charges. Kevin offers to put Kathy in another house if she loses her house. He then explains that he got upset because Kiera left and because he had found the telephone numbers of four or five other men in her phone. Kevin states that Ki-era called one of the men in front of him, he hit her for lying to him about their relationship. Kevin pleads that he did not “punch” her, but only “smacked” her, so he did not know how her face became swollen. Kevin contends that if he had punched her, he would have broken her jaw. Kevin finally denies bringing a weapon to Kathy’s home, saying it was because he knew that she had kids there.
DISCUSSION
A. Sufficiency of Evidence Review
The defendant challenges the sufficiency of the evidence in his fifth assignment of error wherein he alleges that the trial court erred in denying his motion for post-verdict judgment of acquittal[3] and motion for new trial.[4] Defendant also raises separate assignments of alleged trial error. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Marcantel, 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55, citing State v. Hearold, 603 So.2d 731, 734 (La.1992). This review includes the entirety of the evidence, including admissible and inadmissible evidence which was erroneously admitted. Hearold, 603 So.2d at 734; State v. Brown, 08-1434, p. 8 (La.App. 4 Cir. 3/18/09), 7 So.3d 1238, 1242. In Hearold, the Louisiana Supreme Court explained that the evidence is first reviewed for sufficiency because:
the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt.
Hearold, 603 So.2d at 734.
If the entirety of the evidence is insufficient to support a conviction, the accused must be acquitted and the issues raised by the remaining assignment of errors become moot. Id. Thus, this assignment of error questioning the sufficiency of the evidence will be addressed before the remaining assignments of error.
Here, although the Mr. Falkins was charged with home invasion when a *846 person under the age of twelve is present,[5] the jury found him guilty only of the lessor included offense of attempted unauthorized entry of an inhabited dwelling.[6] The elements of unauthorized entry of an inhabited dwelling are: (1) the intentional entry; (2) of any inhabited dwelling belonging to another; (3) by a person without authorization. La. R.S. 14:62.3. Louisiana Revise Statute 14:27(A) defines attempt, in pertinent part, as the specific intent to commit a crime by doing an act for the purposes of and tending directly toward the accomplishing of his object, it being immaterial whether, under the circumstances, the offender would have actually accomplished his purpose.
Although no victim testified in the instant case, the 911 operator testified; the initial responding police officer testified; the investigating officer testified; and 11()the custodian of the records of telephone calls placed by inmates in the custody of the Orleans Parish Criminal Sheriff testified.
Through Officer Gibson’s testimony, the State provided evidence that the defendant admitted to entering the apartment, stating that he bumped the door with his shoulder because Kiera Duncan would not let him in. In addition, the crime scene photographs introduced into evidence depicted damage to a door adjacent to an apartment sign that reads, “Walnut Square 2 B.” The bottom of the front door is bent inward. The interior edge of that door, where the door handle loekset is supposed to be, is split. The loekset is missing from the door, and one crime scene photograph shows a loekset on the floor inside the apartment. The large front door glass pane has been dislodged. One of the photographs is of a larger apartment complex sign and reads: “Walnut Square Apartments, 8501 N. 1-10 Service Road.” Notably, the name of the apartment, its address, and the apartment number all corroborated by the calls placed to 911 before the officers arrived on the scene. This evidence suggests that the entry was forcible, and without consent. Officer Gibson also testified that Kathy Davis resided in the apartment and confirmed that, to his knowledge, defendant had no permission to be in the residence.
The State also introduced recordings of four phone calls purportedly made by the defendant from jail. In the calls, Kevin admits to knocking down Kathy’s door, apologizes to Kathy, and offers to fix the door.
Viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant, Kevin Falkins, forcibly broke the locked front door of an apartment occupied by Kathy Davis, and entered the apartment without her authorization. Thus, the evidence was sufficient to support his conviction for the responsive verdict ofj,,attempted unauthorized entry of an inhabited dwelling. See State v. Porter, 93-1106, p. 4 (La.7/5/94), 639 So.2d 1137, 1140 (“As long as an authorized responsive verdict is a lesser and included grade of the charged offense and the evidence is sufficient to support a verdict of guilty of the charged offense, there is no problem.with sufficiency of the evidence for the responsive verdict”).
There is no merit to this assignment of error.
B. Assignment of Error No. 1 — Admissibility of 911 Calls
In his first assignment of error, the defendant argues that the trial court erred *847 in denying his motion in limine requesting the suppression of the three 911 calls. The defendant’s motion asserted that the 911 tapes should have been excluded because the statements contained therein violated (1) the Confrontation Clause of the Sixth Amendment of the U.S. Constitution, (2) the hearsay provisions of the Louisiana Code of Evidence, and (3) evidentiary rules prohibiting the admission of evidence of other crimes, wrongs, and acts committed by the defendant.
(1) Whether admission of 911 tapes resulted in violation of Confrontation Clause
The defendant first argues that the 911 calls should have been suppressed because the substance of the calls was testimonial in nature, and therefore violated his rights under the Confrontation Clause of the Sixth Amendment, which guarantees the right of a criminal defendant “to be confronted with the witnesses against him.” The United States Supreme Court has held that this guarantee, which is extended to the States by the Fourteenth Amendment, includes the right to cross-examine witnesses. Cruz v. New York, 481 U.S. 186, 189, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987); State v. Collins, 10-0757, p. 22 (La.App. 4 Cir. 5/11/11), 65 So.3d 271, 286.
|12In support of this argument, the defendant relies on United States Supreme Court’s decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), wherein the Court held that the admission of a recorded statement given to police by the defendant’s wife violated the defendant’s right under the Confrontation Clause because the statement was hearsay, because it was testimonial in nature, and because his wife did not testify at trial due to the state’s marital privilege. Most significantly, because his wife did not testify at trial, the defendant had no other opportunity to cross examine her. The Court specifically declined to define the term, “testimonial,” stating only that “[w]hatever else the term covers, it implies at minimum to ... police interrogation.” Crawford, 541 U.S. at 68, 124 S.Ct. at 1374.
The Supreme Court later elaborated on the meaning of testimonial statements in connection with the Sixth Amendment’s Confrontation Clause in Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) — a case dealing specifically with the admission of statements made during a 911 call. In Davis, the victim called 911 to report a domestic altercation with her ex-boyfriend. Id., 547 U.S. at 817, 126 S.Ct. at 2270-71. During the call, the victim identified the defendant as her attacker and described the specifics of the ongoing assault in response to questions by the 911 operator. Id., 547 U.S. at 817-18, 126 S.Ct. at 2271. The trial court allowed the recording of the 911 call to be admitted into evidence despite the fact that the victim did not testify at trial. Id., 547 U.S. at 822, 126 S.Ct. at 2273-74. In finding the recordings to be nontestimonial in nature, and therefore admissible, the Supreme Court explained:
Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to 113meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Id.

The Court reasoned that the statements were nontestimonial because “[a] 911 call, *848 ... at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to ‘establish or prov[e]’ some past fact, but to describe current circumstances requiring police assistance.” Davis, 547 U.S. at 826, 126 S.Ct. at 2276. The Court noted that the victim was “speaking about events as they were actually happening, rather than ‘describ[ing] past events’ ” and that, “[a]l-though one might call 911 to provide a narrative report of a crime absent any imminent danger, [the victim’s] call was plainly a call for help against bona fide physical threat. Id., 547 U.S. at 827, 126 S.Ct. at 2276. The Court also reasoned that the nature of the questions posed by the 911 operator indicated that the purpose of the interrogation was to “resolve the present emergency, rather than simply to learn ... what had happened in the past.” Id. Finally, the Court reasoned that the fact that the victim’s answers were frantic and provided over the phone, in an environment that was not tranquil, or even ... safe” indicated that the statements were nontestimonial. Id., 547 U.S. at 827, 126 S.Ct. at 2276-77. See also, Michigan v. Bryant, — U.S. —, 131 S.Ct. 1143, 1157, 179 L.Ed.2d 93 (2011).
In the present case, the State was allowed to introduce recordings of three separate calls to 911 into evidence. The record indicates that all three of the calls were placed within a span of only five minutes. The first call was placed by the victim, Kiera, at 6:34 a.m.; the second call was placed by the apartment’s security worker, Joy, at 6:37 a.m.; and the third call was placed by the victim’s sister, 1 uKathy, at 6:39 a.m. During the first call, the 911 operator can hear a pounding sound. Thereafter, in response to the operator’s questioning, Kiera identifies the defendant, describes what he is wearing, and explains that he is beating on the door and threatening her. During the second call, Joy explains that she received a call from a panicked female needing assistance and asked that police report to the apartment because she was unable to locate anyone from their security department on apartment grounds to assist. During the third call, Kathy identified the defendant as her sister’s boyfriend and explained that he was getting violent and kicking her door. The defendant can be heard gaining entry into the apartment while Kathy is still on the phone with the 911 operator. Kathy begins crying on the phone.
Under the circumstances of this case, there is no doubt that the statements made in each of the three phone calls to 911 were nontestimonial in nature because the circumstances objectively indicated that they were given to assist police officers in responding to an ongoing emergency. Both Kiera and Kathy are in the apartment at the time that the defendant was trying to gain entry into the apartment and called out of fear from threats of violence. The call by the apartment’s security operator, Joy, was placed to 911 in between the calls from Kiera and Kathy, and was made in an attempt to assist officers in responding to an ongoing emergency; it was therefore of no consequence that Joy was not physically in the apartment with Kiera and Kathy and was not personally in danger. See, e.g. State v. Collins, 10-0757, p. 17 (La.App. 4 Cir. 5/11/11), 65 So.3d 271, 283 (multiple calls to 911 ranging from reporting a shooting to describing suspicious persons running with guns were all nontestimonial because the questions posed by the 911 operator “were necessary to evaluate the situation, locate the perpetrators and to 11fidispatch the required assistance”). When the recordings are viewed objectively, it is clear that the primary purpose of the callers’ statements, and the questioning by the 911 operator *849 was to address and resolve an ongoing emergency. Consequently, the defendant’s constitutional rights under the Confrontation Clause were not violated and this argument is meritless.[7]
(2) Whether admission of 911 tapes constituted inadmissible hearsay
According to the defendant, even if the admission of the 911 recordings did not violate the Confrontation Clause, the recordings were still inadmissible under the rules governing the introduction of hearsay evidence.[8] In Michigan v. Bryant, supra, although the Supreme Court concluded that statements given to assist police with an ongoing emergency were non-testimonial statements that did not violate the Confrontation Clause, it also explained that such a funding does not automatically make a statement admissible under state laws governing the admissibility of hearsay evidence. Id. — U.S. at-, 1B1 S.Ct. at 1155. The Court explained, “the admissibility of a statement is a concern of state and federal rules of evidence, not the Confrontation Clause.” Id.
Louisiana Code of Evidence Article 801(C) defines hearsay as “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” See State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801. Hearsay is ordinarily not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802. Moreover, a trial court’s ruling on the admissibility 116of evidence will not be disturbed on appeal absent a clear abuse of the trial court’s discretion. State v. Bell, 05-0808, p. 12 (La.App. 4 Cir. 12/6/06), 947 So.2d 774, 781; State v. Lewis, 97-2854, p. 20 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004, 1017. A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect. State v. Hall, 02-1098, p. 8 (La.App. 4 Cir. 3/19/03), 843 So.2d 488, 496.
At the outset, we note that the issue of whether the 911 call by Kiera Duncan included inadmissible hearsay is not properly before this Court on appeal. This is because the defendant’s pretrial motion in limine referenced only two 911 calls: the call placed by “Joy” and a call placed by a person identified only as “Lawrence.”[9] Thereafter, during the pre-trial motion hearing, the defendant argued that Ms. Duncan’s testimony should be excluded pursuant to State v. Prieur, 277 So.2d 126, 128 (La.1973), but asserted no other grounds for its exclusion. Lastly, when the State introduced and requested that the 911 recordings be played for the jury, the trial court stated: “All right. Reserving the same objections that we already have, go ahead.” No further objections were made by the defendant regarding the admissibility of the statement.
It is well-settled that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La.C.Cr.P. art. 841(A); State v. Marlowe, 10-1116, p. 35 *850 (La.App. 4 Cir. 12/22/11), 81 So.3d 944, 965-66, writ denied, 12-0231 (La.5/18/12), 89 So.3d 1191. Not only does an objection have to be made, but La.C.Cr.P. art. 841(A) requires that a defendant make known the grounds for his objection, and he is limited on appeal to those grounds articulated |17at trial. State v. Ott, 10-1307, p. 13 (La.App. 4 Cir. 1/5/12), 80 So.3d 1280, 1287, writ denied, 12-0291 (La.5/25/12), 90 So.3d 408. In addition, “[i]n the ordinary case, hearsay evidence not objected to constitutes substantive evidence.” State v. Dabney, 2002-0934, p. 6 (La.4/9/03), 842 So.2d 326, 330, quoting State v. Allien, 366 So.2d 1308, 1311.
Having found that the defendant’s hearsay argument regarding Kiera’s Duncan’s 911 call was not properly preserved for review, we now address whether the calls placed to 911 by Kathy Davis and Joy were inadmissible hearsay. At the pretrial hearing, the State argued that the calls were admissible under the excited utterance exception to the hearsay rule.
An “excited utterance” is defined by La. C.E. art. 803(2) as “[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.” The excited utterance exception requires an occurrence or event sufficiently startling to render the declar-ant’s normal reflective thought process inoperative. State v. Dalton, 99-0902, p. 3 (La.App. 4 Cir. 3/29/00), 759 So.2d 180, 182. In determining whether the declar-ant was under stress of an excited event, the time span between the event and the statement is considered the most important factor. Dalton, 99-0902, p. 4, 759 So.2d at 183; State v. Johnson, 97-1519, pp. 9-10 (La.App. 4 Cir. 1/27/99), 726 So.2d 1126, 1131. “[T]he trial court must determine whether the interval between the event and the statement was long enough to permit a subsidence of emotional upset and a restoration of a reflective thought process.” State v. Henderson, 362 So.2d 1358,1362 (La.1978).
Other factors which may indicate that a statement was the result of reflective thought, but which do not automatically justify exclusion, are: (1) evidence that | lsthe statement was self-serving or made in response to an inquiry; (2) expansion of the excited utterance beyond a description of the event and into past or future facts; and (3) proof that, between the event and the statement, the declarant performed tasks requiring reflective thought. Henderson, 362 So.2d at 1362.
Based on the foregoing, we find that the defendant is correct and that the 911 call by Joy should not have been admitted into evidence under the excited utterance exception to the hearsay rule. La. C.E. art. 803(2). The record is clear that Joy did not observe the incident as it was happening and only called 911 to report what she had been told because she could not dispatch apartment security. Therefore, her regurgitation of what she had been told was hearsay. While she reported that the person in the apartment was panicking, there is nothing in the recording to indicate that Joy, herself, could hear what was going on at the apartment, was startled, or was under the stress of an excited event. Instead, she was able to calmly report what had been told to her and request immediate assistance, suggesting that her normal reflective thought process had not been rendered inoperative because of the situation.
Despite the fact that the recording of Joy’s call to 911 contained statements that should have been excluded as hearsay, we find that this error was harmless. The erroneous admission of evidence is subject to a harmless error analysis. *851 State v. Williams, 12-0252, p. 23 (La.App. 4 Cir. 4/17/13), 115 So.3d 600, 613. A review of the record reveals that Joy’s statements were merely cumulative to other evidence adduced at trial, including the inculpatory evidence contained in Kiera Duncan’s 911 call. Hearsay testimony improperly introduced into evidence, will be considered harmless error if it is found to be cumulative and corroborative of l13other properly admitted evidence and did not contribute to the verdict. See, State v. Diggins, 12-0015, p. 23, (La.App. 4 Cir. 10/23/13), 126 So.3d 770, 788.
We find that the 911 call by Kathy Davis, on the other hand, was properly admitted under the excited utterance exception to the hearsay rule. It is clear from the recording that Ms. Davis made that call while the defendant was in the process of kicking in her front door. She repeatedly asks when the police are getting there and frantically implores the 911 operator to hurry up, stating that her door is almost open. Ms. Davis can be heard suddenly exclaiming something that sounds like he’s in, and she directly pleads with “Kevin.” After a male voice and a disturbance are heard in the background, Ms. Davis begins sobbing as she asks the operator to please send the police; she also reports that the intruder is dragging her sister up the street. Under these circumstances, it cannot be said that the trial court abused its discretion.
(3) Whether the 911 tapes contained inadmissible evidence of other crimes, wrongs or acts
Defendant lastly argues that the portion of 911 calls referencing the defendant’s conduct from the previous night was inadmissible under La C.E. art 404(B)(1), which governs the admissibility of other crimes evidence. Article 404(B)(1) provides that evidence of other crimes, wrongs or acts of a criminal defendant is generally inadmissible in order to show that a defendant is a person of bad character who has acted in conformity therewith. Nonetheless, the State may introduce evidence of other crimes, wrongs or acts if it can establish an independent and relevant reason for its admissibility, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La. C.E. art. 404(B)(1). The State is also allowed to introduce |gnevidence of other crimes, wrongs or acts when the conduct “constitutes an integral part of the act or transaction that is the subject of the present proceeding.” This second objection, commonly referred to as the res gestate exception, is the exception the State relies on. Evidence admissible under the res gestae exception is not subject to any advance notice requirements by the State. State v. Reihard, 05-1262, p. 6 (La.App. 4 Cir. 6/21/06), 935 So.2d 727, 731; State v. Brown, 03-1616, p. 10 (La.App. 4 Cir. 3/31/04), 871 So.2d 1240,1247.
The Louisiana Supreme Court has interpreted the res gestae exception broadly, concluding that the exception includes “not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances.” State v. Colomb, 98-2813, pp. 3-4 (La.10/1/99), 747 So.2d 1074, 1075-1076 (quoting State v. Molinario, 383 So.2d 345, 350 (La.1980)). This exception also incorporates a rule of narrative completeness by which, “the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors a *852 guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant’s legal fault.” State v. Taylor, 01-1638 (La.l/14/03), 838 So.2d 729, 743 (quoting Old Chief v. United States, 519 U.S. at 188, 117 S.Ct. at 654).
A trial court’s ruling on the admissibility of other crimes evidence under La. C.E. art. 404(B)(1) is reviewable under an abuse of discretion standard. See State v. Henderson, 2012-2422, pp. 3-4 (La.1/4/13), 107 So.3d 566, 568 (“[W]e conclude the trial court abused its discretion in finding the defendant’s prior 12i conviction to be inadmissible under LSA-C.E. art. 404(B)(1)”); State v. Barnes, 2011-1421, p. 15 (La.App. 4 Cir. 9/19/12), 100 So.3d 926, 936, writ denied, 2012-2251 (La.4/1/13), 110 So.2d 575.
In the present situation, the defendant argues that the 911 calls made by Kiera Duncan and Kathy Davis should have been suppressed because each contained evidence of prior wrongs or acts. During Ms. Duncan’s 911 call the operator asked: He’s the one busted you in the face last night. Ms. Duncan replied in the affirmative, confirming that fact. In Kathy Davis’ subsequent 911 call, she stated that her sister, Kiera Duncan, had telephoned her at 1:00 a.m. to ask her to pick her up, with Ms. Duncan telling Ms. Davis that she was walking down the street and that the “boy” had beaten her. It was less than five and one-half hours after that call to Kathy Davis by Kiera Duncan that Ms. Duncan made the 911 call about defendant trying to get into her sister’s apartment.
We find that the trial court did not abuse its discretion in concluding that the reference to Ms. Duncan being struck by defendant the previous night was part of the res gestae. It was absolutely part of the continuum of relationship problems between defendant and Kiera Duncan that culminated in defendant kicking in the door of Ms. Davis’ apartment and dragging her sister outside. Although it is not known precisely when defendant hit Ms. Duncan the night before, Ms. Davis’? statement in her 911 call about her sister calling her at 1:00 a.m. to pick her up after the “boy” had beaten her indicates that all the events occurred within perhaps a six-hour period. Kiera Duncan’s 911 call later that morning was made and completed at 6:34 a.m. The playing of the entire 911 call from Ms. Duncan completed the story of the crime for which defendant was being tried.
^Considering all the facts and circumstances, it cannot be said that the trial court abused its discretion in concluding that the sisters’ references to the prior night’s events were admissible as part of the res gestae. For the foregoing reasons, there is no merit to any part of this assignment of error.
C. Assignment of Error No. 2 — Hearsay Testimony of Officer Gibson
In his second assignment of error, the defendant argues that the trial court erred in admitting hearsay testimony by Officer Gibson as to what Kathy Davis told him. During cross-examination, Officer Gibson testified that Ms. Davis told him that the defendant broke her door. On redirect examination, the State asked Officer Gibson whether Ms. Davis had told him anything else, at which point defense counsel objected on the ground that the answer called for hearsay. The trial court overruled the objection, and Officer Gibson testified that Ms. Davis told him:
That once he entered the front door, they ran to the bedroom. He then kicked in that door and began striking Ms. Duncan about the head and face with a closed fist, and then brought her outside.
*853 The State counters that Kathy Davis’ statement was nontestimonial and was not hearsay, citing the U.S. Supreme Court’s Confrontation Clause decision in Michigan v. Bryant, supra, and this Court’s decision in State v. Everett, 11-0714 (La.App. 4 Cir. 6/13/12), 96 So.3d 605. The State’s reliance on these cases is erroneous.
In Everett, the defendant argued that the trial court erred in excluding from evidence a statement obtained by police at the hospital fifteen minutes after a shooting occurred, but while police were still looking for the shooter, under the Confrontation Clause and pursuant to either the present sense impression or excited utterance exception to the hearsay rules found at La. C.E. art 803(1) and (2). 123Everett, 11-0714, p. 24, 96 So.3d at 624. This Court held that the Confrontation Clause did not apply because the statement was nontestimonial; we also found that the statement was hearsay evidence to which neither the present sense impression nor excited utterance exceptions applied. Everett, 11-0714, p. 26, 96 So.3d at 625. The present sense impression exception did not apply because the witness did not make the statement while perceiving the shooting or immediately thereafter. Id. The excited utterance exception did not apply because the there was nothing in the record to indicate that the statement was made while the witness was under the stress of excitement caused by the shooting.[10] Id.
As in Everett, the record in this case is void of any evidence to indicate that Ms. Davis gave her statement to Officer Gibson at a point during which she was still under the stress of the excitement of an intruder gaining entry into her apartment. In fact, Officer Carthon testified that he arrived on the scene first and immediately detained Mr. Falkins until Officer Gibson arrived approximately forty-five minutes later. At that point, the excitement of the situation surrounding the invasion had likely subsided. It was therefore hearsay evidence to which the excited utterance exception did not apply. La. C.E. art. 803(2).
We must next determine whether the introduction of the hearsay was harmless error. As previously stated, improperly introduced hearsay evidence will be considered harmless error if it is found to be cumulative and corroborative of other properly admitted evidence and did not contribute to the verdict. Diggins, 12-0015, p. 23, 126 So.3d at 788. Here, the record indicates that the defendant confessed to forcibly entering Ms. Davis’ residence, going to the bedroom, and | ^getting Ms. Duncan. In addition, the Officer Car-thon observed the defendant outside the apartment dragging or pulling Ms. Duncan. Defendant was only convicted of attempted unauthorized entry of an inhabited dwelling. Consequently, the conclusion can be made beyond a reasonable doubt that the guilty verdict rendered in the case was surely unattributable to any error in admitting the aforementioned hearsay testimony by Officer Gibson. See Robertson, 2006-1537, p. 9, 988 So.2d at 172.
There is no merit to this assignment of error.
D. Assignment of Error No. 3—Ad-missibility of Recordings from Jail
The defendant next argues that the trial court erred in admitting the recordings of four telephone calls defendant *854 made from jail because the calls were not properly authenticated. In support of this argument, the defendant cites La. C.E. art. 901(A), which states that “[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.” One method of authenticating evidence is testimony by a witness with knowledge that the “matter is what it is claimed to be.” La. C.E. art 901(b)(1). A trial court has great discretion in determining whether a sufficient foundation has been laid for the introduction of evidence. State v. Ashford, 2003-1691, p. 14 (La.App. 4 Cir. 6/16/04), 878 So.2d 798, 806 (citing State v. Lewis, 97-2854, p. 31 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004,1022).
Don Hancock, the custodian of evidence for the Orleans Parish Sheriffs Office was able to identify a CD containing a total of ninety calls, eighty-four of 12swhich were made by the defendant;[11] a report listing the ninety calls; and a CD containing four of those calls. Mr. Hancock replied in the affirmative when asked if the CD containing only four calls accurately reflected what was on the “original” disc, containing all of the calls. At that point the State offered the three exhibits into evidence. Defense counsel objected to the introduction of the second CD, stating that she did not believe the proper foundation had been laid for those calls.
Based on a review of the evidence, we find that the trial court did not abuse its discretion in admitting any of the calls. It is not disputed that defendant was in the custody at the time that the calls were made. In addition, in each call, a recording notified the person called that it was a telephone call from the Orleans Parish Prison. Combined with the testimony of the custodian of evidence, it was sufficiently established that the calls were placed from Orleans Parish Prison. Moreover, considering the contents of each call as compared to other evidence, it is reasonable to conclude that the calls were from defendant Kevin Falkins.
Lastly, we find that the recordings were self-authenticating insofar as being calls placed by Kevin Falkins from Orleans Parish Prison relating to events giving rise to his arrest and incarceration for the offense for which he was tried in the instant ease. In the first call, “Kevin” is attempting to persuade “Kiera” and “Kathy” to drop charges against him. In the second call, a different woman advises “Kevin” that “Kathy” said that she is not dropping any charges and that “Kiera” is only dropping the kidnapping charge; in this call, “Kevin” also admits to kicking in “Kathy’s” door. In the third call, “Kevin” and another woman discuss charges of false imprisonment and aggravated burglary and “Kevin” denies that |2r,anything happened to “Kiera’s” face. In the fourth call, “Kevin” apologizes to “Kathy,” offers to repair her door, and explains his motive. Thus the content of the four calls, in light of the other evidence, establishes that they are what they were represented to be — calls made by defendant from jail, relating to his arrest for the offense for which he was being tried.
There is no merit to this assignment of error.
E. Assignment of Error No. 4 — Denial of Motion to Continue
In this assignment of error defendant argues that the trial court erred in *855 denying his motion for continuance. On the morning of the first day of trial, April 16, 2012, defense counsel filed a motion to continue the trial, representing that less than a week before trial, on either April 11 or 12, 2012, the State had provided to her a CD of approximately ninety jail telephone calls averaging fifteen minutes each. It is unclear from the record when the State furnished defense counsel with the CD containing the four jail telephone calls it intended to introduce at trial. Counsel argued that she had not had enough time to listen to all of the jail telephone calls; however, on appeal defendant does not argue that he was prejudiced by not timely receiving a CD of the excerpted calls prior to trial.
The trial court denied the motion, as well as defense counsel’s alternate request that if the court permitted the State to introduce any of the recordings that they all be introduced “so that the jury would have a full and complete understanding of any phone calls that were made by Mr. Falkins.”
On appeal, the defendant argues that he was prejudiced because his trial counsel did not have an adequate opportunity to listen to the other recordings “to see if there was anything that could help the defense, such as exculpatory statements from Kathy Davis or anyone else the appellant may have spoken with.” | ^Defendant complains that the State was able to go through the calls and select those supporting its theory of the case, however, his trial attorney was not. He asserts that because his trial counsel was not provided sufficient time to listen to all ninety calls, she was unprepared to defend against the calls that were used against him.
“A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor.” La.C.Cr.P. art. 712. Generally, a motion for continuance shall be in writing and specifically allege the grounds upon which it is based, and it shall be filed at least seven days prior to the commencement of trial. La.C.Cr.P. art. 707. However, upon written motion at any time and after contradictory hearing, a trial court may grant a continuance upon a showing that granting the motion is in the interest of justice. Id.
A trial court’s decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court, and a reviewing court will not disturb such determination absent a clear abuse of discretion. State v. Brown, 2012-0626, p. 16 (La.App. 4 Cir. 4/10/18), 115 So.3d 564, 575; State v. Reeves, 2006-2419, p. 73 (La.5/5/09), 11 So.3d 1031, 1078-1079. In addition, a reviewing court should generally decline to reverse a conviction even on a showing of an improper denial of a motion for a continuance absent a showing of specific prejudice. Reeves, 2006-2419, p. 73,11 So.3d at 1079.
We cannot say that the trial court abused its discretion in denying the defendant’s motion to continue. In essence, on appeal, the defendant alleges only that he was possibly prejudiced — such possibility being dependent upon whether, in fact, there were any exculpatory statements in the recorded calls or whether in fact something else in the calls was of such nature that it clearly would have aided ^counsel in defending against the inculpatory information in the four calls played for the jury. Such speculation as to the existence of prejudice falls short of the “specific” prejudice defendant, himself, concedes is required before a court will reverse a conviction for the improper denial of a motion for continuance.
*856 The CD containing all ninety recorded telephone calls is part of the record on appeal, as is the CD containing the four excerpted calls played for the jury. Appellate counsel was free to review the CD of all the calls to ascertain whether any of the calls, in fact, contained information that might have aided the defense at trial or shown how the defendant was specifically prejudiced. This was not done.
Considering all the facts and circumstances, it cannot be said that defendant has established either that the trial court abused its discretion in denying the motion for continuance or that he was specifically prejudiced by the denial of his motion for continuance.
There is no merit to this assignment of error.
F. Assignment of Error No. 6 — Sentencing
A review of the record reveals one patent error, which defendant also identifies as his final assignment of error. This error relates to the trial court’s stipulation that defendant’s thirty-five year sentence as a fourth-felony habitual offender be served without the benefit of parole.
Regarding a conviction as a fourth felony offender, La. R.S. 15:529.1(A)(4) provides as follows:
If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then
(a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest 129prescribed for a first conviction but in no event less than twenty years and not more than his natural life; or
(b) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
The trial court properly sentenced defendant under subpart (a) of La. R.S. 15:529.1(A)(4) to thirty-five years at hard labor. This is because the defendant’s instant conviction, his fourth felony as contemplated by the statute, is for attempted unauthorized entry of an inhabited dwelling under La. R.S. 14:27 and La. R.S. 14:62.3, and was punishable by only up to three years at hard labor with no restrictions on parole eligibility. By virtue of these facts alone, his adjudication as a fourth-felony habitual offender falls outside of the parameters of subpart (b) of La. R.S. 15:529.1(A)(4).
Neither La. R.S. 15:529.1(A)(4)(a), La. R.S. 14:27, nor La. R.S. 14:62.3 contain restrictions as to parole, probation, or suspension of sentence, however, under La. R.S. 15:529.1(G), any sentence imposed on a habitual offender “shall be at hard labor without benefit of probation or suspension of sentence.” Louisiana Revised Statute 15:529.1(G) makes no mention of a restriction as to the benefit of parole. Consequently, because there is no language in these provisions or elsewhere providing that the defendant’s sentence as a fourth-felony habitual offender is to be served *857 without the benefit of parole, his sentence must be amended to delete that restriction.
13nThe record reflects no other patent errors.
DECREE
For the reasons discussed herein, we hereby affirm the conviction of defendant, Kevin Falkins. We further amend Mr. Falkins’ sentence to delete the restriction that it be served without benefit of parole and affirm his sentence as amended.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED.

. Defendant was charged in the same bill information with second degree kidnapping, but that charge was nolle prosequied on July 19, 2012.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. La.C.Cr. P. art. 821

. La.C.Cr.P. art. 851.

. La. R.S. 14:62.8(3)

. La. R.S. 14:62.3; La. R.S. 14:27 (attempt).

.Even if it could be said that the call by Joy was improper, claims of error under the Confrontation Clause are subject to a harmless error analysis. State v. Moore, 10-0314, p. 7 (La.App. 4 Cir. 10/13/10), 57 So.3d 1033, 1038-39. See discussion, infra.

. It is uncontested that there was no evidence that the callers were unavailable to testify which would have made the hearsay testimony admissible under La. C.E. art 804.

. No 911 call from anyone identified as "Lawrence,” or from any other male was introduced in evidence at trial.

. In its brief, the State mistakenly asserts that the statement was found to be “non-testimonial and admissible at trial.”

. Four of the calls were determined to be from other inmates with different names and pin numbers.