STATE OF LOUISIANA          *          NO. 2023-KA-0541

VERSUS                      *
                                       COURT OF APPEAL
GINO MCDOWELL               *
                                       FOURTH CIRCUIT
                            *
                                       STATE OF LOUISIANA
                      * * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 543-742, SECTION "F"
Honorable Robin D. Pittman, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge
Nakisha Ervin-Knott)

Jason Rogers Williams
District Attorney
Brad Scott
Chief of Appeals
Patricia Amos
Assistant District Attorney
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 South White Street
New Orleans, LA 70119

    COUNSEL FOR THE STATE OF LOUISIANA/APPELLEE

Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, LA 70073-2333

    COUNSEL FOR DEFENDANT/APPELLANT

                                        **AFFIRMED**

                                  **DECEMBER 2, 2024**

JCL

DLD

NEK

This is a criminal case. The defendant/appellant, Gino McDowell ("Defendant"), appeals his conviction for simple robbery. For the following reasons, we affirm Defendant's conviction and sentence.

## PROCEDURAL HISTORY

On December 4, 2018, Defendant was charged by bill of information with attempted armed robbery with a firearm (count one), a violation of La. R.S. 14:27 and La. R.S. 14:64.3; theft in an amount less than $1,000.00 (count two), a violation of La. R.S. 14:67(B)(4); intimidation of a witness (count three), a violation of La. R.S. 14:129.1; simple burglary (count four), a violation of La. R.S. 14:62; and battery on a correctional officer (count five), a violation of La. R.S. 14:34.5(B)(2). On December 19, 2018, Defendant pled not guilty to the charges.

The case proceeded to trial on October 24, 2022. At the commencement of trial, the State severed count 5 (battery on a correctional officer), and trial proceeded on counts one through four. At the conclusion of the trial, the jury returned a verdict of guilty of simple burglary and not guilty of attempted armed robbery with a firearm and intimidation of a witness. The district court found Defendant not guilty of misdemeanor theft under $1,000.00. Defendant

1

subsequently filed a motion for post-verdict judgment of acquittal and motion for new trial.

On December 19, 2022, a sentencing hearing was held, at the conclusion of which the district court took the matter under advisement. On January 4, 2023, the court denied Defendant's motion for post-verdict judgment of acquittal and motion for new trial. Thereafter, the court sentenced Defendant to thirty months in the custody of the Department of Corrections, with credit for time served. This appeal followed.

## STATEMENT OF FACTS

At Defendant's trial, a number of witnesses were called to the stand, and the following testimony was adduced.[1]

Tyrell Morris, the executive director of the Orleans Parish Communications District, the entity responsible for answering and processing 911 calls, verified receipt of a 911 call on the date of the incident at issue in this case wherein an individual called to request police assistance. Mr. Morris authenticated the 911 call, and the call was admitted into evidence over the defense's objection. The call was played to the jury at a later portion of the trial.

At the outset of the 911 call, the caller informs the operator that she is located at the corner of Broad Street and Canal Street and that someone went in her car and took the keys. She explains that earlier that day, she released the perpetrator from the custody of the Orleans Parish Sheriff's Office. The caller then states, "He's sitting in my car, and he took the keys out of my car." A little over a minute later, the caller states, "He's tryin' to walk away now," and seconds later

---

[1] Since the only charge on which Defendant was convicted was simple burglary, our summary of the trial testimony is limited to testimony related to the simple burglary charge.

2

reports that "He's still tryin' to get in my vehicle!" The caller then provides a physical description of the perpetrator.

At 0:02:44, the caller addresses the perpetrator, "Give me the keys . . . . You know you took the keys, give 'em to me so I can go." At 0:03:13, the caller asks the operator, "Can they (the police) hurry up please because I'm out here by myself?"; the operator responds that the call is "a high priority." The operator asks for the current location of the perpetrator, and the caller responds, "He's right here by my car, he's naked as hell!", and then, addressing the perpetrator, continues, "Back up, back up from me, move, just give me the keys so I can go!" At 0:03:56, the operator asks, "You feel like he [is] a danger?", and the caller responds, "Uh, yes." At 0:04:11, the caller again tells the perpetrator to stop trying to get in her car. At 0:04:26, the operator asks if the perpetrator "look[s] like he's disturbed," and the caller answers, "Yeah, somethin' wrong with him."

At 0:06:01, the caller states, "He still tryin' to get in my [expletive] car." The operator asks whether the perpetrator broke into the vehicle or had a key, and the caller responds, "He broke into my car. . . . When I came out the store, he was sitting in my car." Seconds later, the caller advises that the police have arrived on the scene. At 0:06:44, the caller again tells the perpetrator to give her the keys so she can leave. The caller can then can be heard telling the responding officers what happened.

New Orleans Police Department Officer Marlon Padilla ("Officer Padilla") testified that on August 12, 2018, he was dispatched to the corner of Broad Street and Canal Street in connection with a complaint of a naked person at a bus stop. Officer Padilla explained that in his body-worn camera footage, introduced into evidence as State's exhibit 21, the victim's vehicle, which the victim alleged

3

Defendant had burglarized, was depicted. Also depicted in the footage was Defendant, who was naked at the time Officer Padilla arrived on the scene.

Officer Padilla testified that he searched the vehicle for the purpose of trying to locate the victim's keys, which were reported stolen, but the keys were not in the vehicle. An unknown male advised Officer Padilla that there was a shirt and a bag nearby with keys and paperwork, which he believed belonged to Defendant, and he directed the officer to the bag. Officer Padilla recovered a plastic bag, which contained the victim's keys, two phone chargers belonging to the victim, and jail release paperwork in Defendant's name. A shirt was also found on top of the plastic bag. Officer Padilla asked Defendant whether the shirt and the paperwork belonged to him, and he responded affirmatively by nodding his head.

New Orleans Police Department Officer Kelsey Winkler ("Officer Winkler") testified that she was involved in the apprehension of Defendant on August 12, 2018. Officer Winkler stated that she received a call for service at 1:19 a.m. in connection with a vehicle burglary. When she arrived on the scene, the victim's vehicle was in the middle of the intersection of Canal Street and Broad Street, and Defendant was standing at the back of the vehicle. At that point, Defendant was naked.

Shortly after arriving on the scene, Officer Winkler placed Defendant in the back of her police vehicle and spoke with the victim. Thereafter, she took pictures of the items recovered from a plastic bag found nearby, placed the recovered items that did not belong to the victim with Central Evidence and Property, and transported Defendant to Central Lockup. Defendant was arrested on the charge of simple burglary of a vehicle.

## ASSIGNMENTS OF ERROR

4

On appeal, Defendant raises the following assignments of error:

1.    The evidence was insufficient to uphold the conviction for simple burglary; and

2.    The trial court erred in allowing the admission of the 911 call of the victim.

## LEGAL DISCUSSION

### *Sufficiency of the Evidence*

Defendant contends the State presented insufficient evidence to sustain his simple burglary conviction. While counsel concedes in her brief that Defendant entered the victim's vehicle, counsel asserts that because the victim did not testify at trial, there was no admissible evidence presented to support a finding that Defendant did not have the victim's permission to be in her car. Defendant asserts that the only evidence presented regarding his lack of authority to be in the victim's vehicle was a hearsay 911 telephone call.

Defendant further argues that even if he lacked permission to be in the victim's vehicle, the State was required to show that he possessed the intent to permanently deprive the victim of her keys and phone chargers. According to Defendant, this requirement was not met because no one observed him take the victim's property nor was it found on his person.

Further, Defendant asserts that even though the items taken from the victim's vehicle were found in a nearby plastic bag, such circumstantial evidence failed to exclude the possibility that the unknown male who directed Officer Padilla to the bag was the individual who removed the items from the victim's car.

The standard of review for claims of insufficiency of the evidence was set out by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979):

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

(emphasis in original) (citations omitted). "Under the *Jackson* standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court." *State v. Williams*, 11-0414, p. 18 (La. App. 4 Cir. 2/29/12), 85 So.3d 759, 771 (citation omitted). Further, "a fact finder's credibility determination is entitled to great weight and should not be disturbed unless it is contrary to the evidence." *Id.* (citations omitted).

"When the State uses circumstantial evidence to prove the elements of the offense, La. R.S. 15:438 requires that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *Id.*, 11-0414, p. 16, 85 So.3d at 770 (quoting *State v. Neal*, 00-0674, p. 9 (La. 6/29/01), 796 So.2d 649, 657)(internal quotations omitted).

Further, the Louisiana Supreme Court held in *State v. Davis*:

In circumstantial evidence cases, this court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, this court, evaluating the evidence in the light most favorable to the prosecution, determines whether the possible alternative hypothesis is sufficiently

6

> reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under *Jackson v. Virginia*. . . .

92-1623 (La. 5/23/94), 637 So.2d 1012, 1020 (emphasis omitted) (citations omitted).

La. R.S. 14:62(A)(1) provides, in pertinent part:

> Simple burglary is . . . [t]he unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, … with the intent to commit a felony or any theft therein. . . .

As noted earlier, defense counsel concedes that Defendant entered the victim's vehicle but asserts nothing was presented at trial to show he did not have permission to enter the vehicle other than the 911 call, which he asserts is inadmissible hearsay. However, for the reasons stated in our discussion below addressing Defendant's second assignment of error, the 911 call was properly admitted into evidence. During the 911 call, the victim stated that the perpetrator "broke into" her car. Accordingly, the evidence presented at trial was sufficient to prove that Defendant lacked permission to enter the victim's car.

Next, Defendant contends that an intent to deprive the victim of her keys and phone chargers was not shown because no one observed him take the victim's property and it was not found on his person. However, the stolen items were found nearby in a bag containing not only the stolen goods but also property that Defendant conceded at the scene belonged to him. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found it was Defendant's intent to deprive the victim of her property.

Finally, in an effort to show that the evidence presented was insufficient to support his conviction, Defendant offers another hypothesis – that the unknown

7

man, who directed Officer Padilla to the location of the bag containing the stolen items, committed the crime. In evaluating Defendant's proposed hypothesis, this Court, examining the evidence in the light most favorable to the prosecution, must determine "whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under *Jackson v. Virginia*. . . ." *Davis,* 92-1623, 637 So.2d at 1020 (emphasis excluded) (citations omitted).

Once again, the stolen goods were found nearby with property belonging to Defendant. Based on this circumstantial evidence, the alternative hypothesis offered by Defendant is not sufficiently reasonable that a rational juror could not have found Defendant guilty of simple burglary. Accordingly, we find Defendant's first assignment of error lacks merit.

### *Admission of the 911 call*

Defendant argues that his right to confront the witnesses against him was violated when the district court, over his objection, permitted the 911 call made by the victim to be played to the jury when the victim did not testify at trial.

We review the district court's ruling as to the admissibility of evidence under an abuse of discretion standard. *See State v. D.D.*, 18-0891, p. 36 (La. App. 4 Cir. 12/27/19), 288 So.3d 808, 837 (citation omitted); *State v. Jackson*, 12-0090, p. 12 (La. App. 4 Cir. 4/24/13), 115 So.3d 1155, 1163 (citations omitted).

In *State v. Falkins*, 12-1654, pp. 11-13 (La. App. 4 Cir. 7/23/14), 146 So.3d 838, 847-48, this Court addressed the issue of whether a statement was testimonial:

> The defendant first argues that the 911 calls should have been suppressed because the substance of the calls was testimonial in nature, and therefore violated his rights under the Confrontation Clause of the Sixth Amendment, which guarantees the right of a criminal defendant "to be

confronted with the witnesses against him." The United States Supreme Court has held that this guarantee, which is extended to the States by the Fourteenth Amendment, includes the right to cross-examine witnesses. *Cruz v. New York,* 481 U.S. 186, 189, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987); *State v. Collins,* 10-0757, p. 22 (La.App. 4 Cir. 5/11/11), 65 So.3d 271, 286.

In support of this argument, the defendant relies on United States Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), wherein the Court held that the admission of a recorded statement given to police by the defendant's wife violated the defendant's right under the Confrontation Clause because the statement was hearsay, because it was testimonial in nature, and because his wife did not testify at trial due to the state's marital privilege. Most significantly, because his wife did not testify at trial, the defendant had no other opportunity to cross examine her. The Court specifically declined to define the term, "testimonial," stating only that "[w]hatever else the term covers, it implies at minimum to ... police interrogation." *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374.

The Supreme Court later elaborated on the meaning of testimonial statements in connection with the Sixth Amendment's Confrontation Clause in *Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) – a case dealing specifically with the admission of statements made during a 911 call. In *Davis,* the victim called 911 to report a domestic altercation with her ex-boyfriend. *Id.,* 547 U.S. at 817, 126 S.Ct. at 2270-71. During the call, the victim identified the defendant as her attacker and described the specifics of the ongoing assault in response to questions by the 911 operator. *Id.,* 547 U.S. at 817-18, 126 S.Ct. at 2271. The trial court allowed the recording of the 911 call to be admitted into evidence despite the fact that the victim did not testify at trial. *Id.,* 547 U.S. at 822, 126 S.Ct. at 2273-74. In finding the recordings to be nontestimonial in nature, and therefore admissible, the Supreme Court explained:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing

emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.*

The Court reasoned that the statements were nontestimonial because "[a] 911 call, ... at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Davis,* 547 U.S. at 826, 126 S.Ct. at 2276. The Court noted that the victim was "speaking about events as they were actually happening, rather than 'describ[ing] past events' " and that, "[a]lthough one might call 911 to provide a narrative report of a crime absent any imminent danger, [the victim's] call was plainly a call for help against bona fide physical threat. *Id.,* 547 U.S. at 827, 126 S.Ct. at 2276. The Court also reasoned that the nature of the questions posed by the 911 operator indicated that the purpose of the interrogation was to "resolve the present emergency, rather than simply to learn ... what had happened in the past." *Id.* Finally, the Court reasoned that the fact that the victim's answers were frantic and provided over the phone, in an environment that was not tranquil, or even ... safe" indicated that the statements were nontestimonial. *Id.,* 547 U.S. at 827, 126 S.Ct. at 2276-77. *See also, Michigan v. Bryant,* [562] U.S. [344], 131 S.Ct. 1143, 1157, 179 L.Ed.2d 93 (2011).

We find that the statements made by the victim during the 911 call are nontestimonial because the primary purpose of the call was to enable police assistance to meet an ongoing emergency, and the questions asked were for information necessary to resolve the present emergency.

Defendant also argues that the 911 call constituted inadmissible hearsay. "Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(C) (internal quotations omitted). Hearsay is generally

not admissible, subject to certain exceptions. *See* La. C.E. art. 802. "Present sense impressions," or statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter," are not excluded by the hearsay rule, regardless of the declarant's availability. *See* La. C.E. art. 803(1). "Excited utterances," which are statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," are similarly not excluded by the hearsay rule. *See* La. C.E. art. 803(2).

"In determining whether a statement qualifies as a present sense impression exception to the hearsay rule, the critical factor is whether the statement was made while the declarant was perceiving the event or immediately thereafter." *State v. Morgan*, 23-0534, p. 6 (La. App. 4 Cir. 10/6/23), 376 So.3d 280, 284, *writ denied*, 23-01386 (La. 1/10/24), 376 So.3d 137 (quotation omitted). "The excited utterance exception requires an occurrence or event sufficiently startling to render the declarant's normal reflective thought process inoperative." *Falkins*, 12-1654, p. 17, 146 So.3d at 850 (citing *State v. Dalton*, 99-0902, p. 3 (La. App. 4 Cir. 3/29/00), 759 So.2d 180, 182). "In determining whether the declarant was under stress of an excited event, the time span between the event and the statement is considered the most important factor." *Id.* (first citing *Dalton*, 99-0902, p. 4, 759 So.2d at 183; and then citing *State v. Johnson*, 97-1519, pp. 9-10 (La. App. 4 Cir. 1/27/99), 726 So.2d 1126, 1131). Courts have also considered whether the statement is self-serving or in response to an inquiry; whether the statement expands beyond a description of events to include past or future facts; and whether the declarant performed tasks requiring reflective thought between the event and the statement. *Id.*, 12-1654, pp. 17-18, 146 So.3d at 850 (citation omitted).

The victim's statements in the 911 call are exceptions to the hearsay rule as provided in La. C.E. art. 803(1) and (2). The victim's 911 call was a present sense impression because her statements described an event while she was perceiving the event and/or immediately thereafter. She called 911 to explain that someone had broken into her car and taken the keys. During the call, the victim repeatedly stated that the perpetrator was attempting to reenter her car. Also, the 911 call was an excited utterance because the victim made statements relating to a startling event while she was under the stress of the excitement caused by the event. When the victim initiated the call and was speaking to the 911 operator, the perpetrator was present nearby. The victim related the ongoing attempts made by the perpetrator to reenter her vehicle. She described the perpetrator, who was naked, as disturbed and stated that she believed that she was in danger. Because of the stressfulness and dangerousness of this situation, the victim's statements in the 911 call were excited utterances. Defendant's second assignment of error lacks merit.

## DECREE

For the foregoing reasons, we affirm Defendant's conviction and sentence.

**AFFIRMED**

12